IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DEBRA MCKNIGHT, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:07-CV-2107-K |
| § | |
| TRINITY RIVER AUTHORITY OF § | |
| TEXAS, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed October 21, 2008, and Plaintiff's Motion to Strike Defendant's Pleadings, filed February 19, 2009. Following its review and consideration of the motions, responses, replies, summary judgment record, and the applicable law, the court rules that Defendant's Motion for Summary Judgment is **granted**, and Plaintiff's claims for hostile environment sexual harassment and retaliation are **dismissed with prejudice.** Plaintiff's Motion to Strike Defendant's Pleadings is **denied as moot.**

### I.   Factual and Procedural Background

The majority of the facts described herein are presented in the summary judgment record as undisputed. However, where facts are disputed they are stated in the light most favorable to Plaintiff, the non-movant. Plaintiff Debra McKnight ("McKnight") was hired by Defendant Trinity River Authority of Texas ("TRAT") in January 2006.

1

McKnight acknowledged having received a copy of TRAT's employee handbook and sexual harassment policy on January 3, 2006. TRAT's sexual harassment policy states that an employee who experiences unwelcome sexual harassment should report the harassment to her immediate supervisor, who should then contact the manager of personnel services to investigate.

McKnight worked in TRAT's Purchasing Department. According to McKnight, her coworker Gary Hoyt ("Hoyt") would occasionally brush up against her when he squeezed past her in cramped quarters. On November 14, 2006, McKnight complained to her supervisor Teresa Lobacz ("Lobacz") that Hoyt had brushed up against her and touched her buttocks the previous day. Lobacz did not immediately investigate.

McKnight emailed Lobacz on November 21 to follow up on her complaint. Lobacz responded that same day that the complaint had not been forgotten, and told McKnight she had spoken to her supervisor John Owens ("Owens"), TRAT's Manager of Support Resources, about the matter. Lobacz stated that she was planning to discuss the issue with Hoyt upon her receipt from Owens of a written policy that she could reference while speaking with him. In that same response, Lobacz invited McKnight to meet with her and Owens to further discuss the issue, and also told McKnight to "come talk to me if you want". McKnight responded shortly thereafter that "Yes. That would be great" and indicated that she could do so the following week, although she stated that she had expected the issue to be resolved more quickly. Sometime after November 13th,

McKnight also spoke to Lee Shaffer ("Shaffer"), TRAT's Office Coordinator, concerning her problems with Hoyt. During that meeting Shaffer offered to speak to Lobacz on McKnight's behalf. McKnight declined Shaffer's offer.

On or around December 5, 2006, McKnight told Lobacz that Hoyt had made inappropriate sexually oriented comments to another coworker, Michelle Orbeck ("Orbeck"). Shortly thereafter, a "no touching" policy was instituted in the department. McKnight contacted Lobacz again on December 7, 2006 regarding her earlier complaint about Hoyt. Lobacz responded that she had lost McKnight's earlier email about the complaint, and asked McKnight to provide it to her again, which McKnight did. Hoyt was not disciplined for the alleged November 13th incident. On December 22, 2006, McKnight and Hoyt were involved in another incident wherein Hoyt tapped McKnight on the forehead several times during a conversation with her and other employees.

Lobacz reviewed McKnight's performance on January 3, 2007. In the review, Lobacz noted that McKnight was doing "a fine job," and awarded her a raise. However, Lobacz also stated that McKnight and others in the Purchasing Department needed to work together as a group despite personality conflicts between team members.

On January 12, 2007, Hoyt struck McKnight with a cardboard tube containing a calendar. McKnight then hit Hoyt back. McKnight complained about this incident to TRAT Manager of Personnel Services Taylor Huynh ("Huynh"). Huynh and Human Resource Supervisor Julie Hoppe ("Hoppe") investigated the incident by interviewing

McKnight, Hoyt, Lobacz and Orbeck.

Following the investigation, both McKnight and Hoyt were terminated by Owens on January 24, 2007. In the termination letters issued to McKnight and Hoyt, Owens stated that "[m]anagement has determined that your continued employment threatens the production and morale of the Northern Region Purchasing Department and of the Authority." McKnight now brings claims against TRAT for hostile environment sexual harassment, and retaliation.

## II.     Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be

viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

### III.   TRAT's Motion for Summary Judgment

TRAT moves for summary judgment on all of McKnight's claims, contending that there is no genuine issue of material fact in the record that would permit her to proceed to trial.  The court will consider each of her claims separately.

#### A.   Hostile Environment Sexual Harassment

McKnight claims that Hoyt's conduct toward her created a sexually hostile working environment, in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* A hostile-work-environment claim consists of five elements:  1) the plaintiff belongs to a protected group; 2) she was subjected to unwelcome sexual harassment; 3) the harassment complained of was based on sex; 4) the harassment affected a term, condition, or privilege of her employment; and 5) her employer knew or should have known of the harassment and failed to take prompt remedial action.  *Septimus v. Univ. of Houston,* 399 F.3d 601, 611 (5th Cir.2005); *Hockman v. Westward Communications, LLC,* 407 F.3d 317, 325 (5th Cir. 2004); *Jones v. Flagship Int'l,* 793 F.2d 714, 719-20 (5th Cir.1986).  For harassment to affect a term, condition, or privilege of employment, it must be both objectively and subjectively abusive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Butler v. Ysleta Indep. Sch. Dist.,* 161 F.3d 263, 269 (5th Cir.1998). Whether an environment is objectively hostile or abusive

is determined by considering the totality of the circumstances. *Harris,* 510 U.S. at 23, 114 S.Ct. 367. Although no single factor is required, courts look to 1) the frequency of the discriminatory conduct; 2) its severity; 3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; 4) whether it unreasonably interferes with an employee's work performance, *id.* at 23, 114 S.Ct. 367; and 5) whether the complained-of conduct undermines the plaintiff's workplace competence, *Butler,* 161 F.3d at 270.

To survive summary judgment, the harassment must be "so severe and pervasive that it destroys a protected class member's opportunity to succeed in the work place." *Septimus,* 399 F.3d at 611; *Shepherd v. Comptroller of Pub. Accounts,* 168 F.3d 871, 874 (5th Cir.1999). The alleged conduct must be more than rude or offensive comments, teasing, or isolated incidents. *Shepherd,* 168 F.3d at 874. Moreover, "implicit or explicit in the sexual content [of the harassment] [must be] the message that the plaintiff is incompetent because of her sex." *Butler,* 161 F.3d at 270.

Having reviewed the summary judgment record in the light most favorable to McKnight, the court concludes that she has failed to raise a genuine issue of material fact concerning severe and pervasive sexual harassment. By her own testimony, McKnight admits that Hoyt would brush up against her "on occasion." The only other specific allegations she makes against Hoyt are that he tapped her on the forehead several times during a conversation in late December 2006 and that they had an

altercation in January 2007 where the two hit each other with cardboard tubes. Apart from these two complaints, the only other issue raised by McKnight was Hoyt's alleged harassment of Orbeck. In her testimony, Orbeck denies that the incident referenced by McKnight was sexual in nature, and states that she was not offended by it.

In short, the totality of McKnight's allegations do not amount to a severe and pervasive hostile working environment. *See, e.g. Hockman,* 407 F.3d at 328 (affirming summary judgment on hostile work environment claim where alleged harasser remarked to plaintiff about another employee's body, once slapped her on the behind with a newspaper, "grabbed or brushed" against plaintiff's breasts and behind, once held her cheeks and tried to kiss her, asked plaintiff to come to the office early so that they could be alone, and once stood in the door of the bathroom while she was washing her hands); *Shepard,* 168 F.3d at 872 (summary judgment for employer affirmed where harassment included remark that plaintiff's "elbows [were] the same color as [her] nipples," commenting on the size of plaintiff's thighs while pretending to look under her desk, and attempting to look down her clothing). For this reason, TRAT is entitled to judgment as a matter of law on McKnight's hostile environment claim.

   B.   Retaliation

McKnight next claims that her employment with TRAT was terminated in retaliation for her complaint of sexual harassment. TRAT also moves for summary judgment on this claim, contending that McKnight cannot establish a causal link

between her protected activity and TRAT's decision to fire her, and that it had a legitimate, non-retaliatory reason for her discharge.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). We analyze retaliation claims under the *McDonnell Douglas* burden-shifting framework. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.,* 179 F.3d 164, 167 (5th Cir.1999) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

To make out a prima facie case of retaliation, McKnight must set forth proof that: 1) she engaged in protected conduct; 2) she was thereafter subjected to an adverse employment action; and 3) the adverse employment action was taken in response to her protected conduct. *See Baker v. Am. Airlines, Inc.,* 430 F.3d 750, 754 (5th Cir.2005); *Chaney,* 179 F.3d at 167. Close timing between an employee's protected activity and the complained-of adverse employment action may provide the causal connection required to make out a *prima facie* case of retaliation. *McCoy v. City of Shreveport,* 492 F.3d 551, 562 (5th Cir.2007), *citing Swanson v. Gen. Servs. Admin.,* 110 F.3d 1180, 1188 (5th Cir.1997). If McKnight successfully establishes her *prima facie* case, the burden then shifts to TRAT to articulate a legitimate, nonretaliatory reason for McKnight's firing. *Id.* If TRAT carries this burden, then McKnight must present evidence showing that

8

TRAT's proffered rationale was pretextual and that engaging in the protected activity was the but-for cause of the adverse employment action. *Id.; Septimus,* 399 F.3d at 608.

It is undisputed that McKnight engaged in conduct protected by Title VII, and also suffered an adverse employment action. Therefore, McKnight has met the first two prongs of her *prima facie* case of retaliation. TRAT argues on summary judgment that she cannot establish a causal connection between her protected activity and its decision to discharge her from employment. The court disagrees. McKnight was terminated approximately 2 ½ months after her initial complaint about Hoyt, and less than two weeks after she complained to Huynh in January 2007, shortly after the completion of Huynh's investigation. Further, McKnight had received a relatively positive performance review within the month preceding her termination. Although the close timing between McKnight's complaints and her termination is all that she offers in terms of a causal connection, it is sufficient to establish her *prima facie* case of retaliation. *McCoy,* 492 F.3d at 562; *Swanson,* 110 F.3d at 1188; *see also Ackel v. Natl. Communications, Inc.,* 339 F.3d 376, 385 (5th Cir. 2003) (at *prima facie* stage, standard for causation element is less stringent than a but for causation standard).

Thus, because McKnight has successfully articulated a *prima facie* case of retaliation, TRAT must now set forth a legitimate, non-retaliatory reason for its decision to terminate McKnight's employment. TRAT has set forth evidence of its reasons through the testimony of Lobacz and Owens. Lobacz testified that she was aware of the

9

January 12, 2007 incident involving McKnight and Hoyt striking each other with calendars. Owens further testified that after interviewing McKnight's supervisors and fellow employees, he determined that she was insubordinate, and physically and verbally combative, including but not limited to her January 12th altercation with Hoyt. McKnight admits engaging in that incident, including having hit Hoyt with a cardboard tube. It appears from the summary judgment record that Owens viewed McKnight's conduct (whether admitted by McKnight or reported by others) as a threat to departmental productivity and morale, and therefore he terminated her employment. Based upon Owens' testimony, the court finds that TRAT has sufficiently set forth a legitimate, non-retaliatory reason for McKnight's firing.

Because TRAT has carried its burden of production, the burden now shifts back to McKnight to raise a genuine issue of material fact regarding either mixed motive or pretext. Here, McKnight's ultimate burden is to show that TRAT fired her not for its stated reasons, but in retaliation for her sexual harassment complaint against Hoyt. *Strong v. University Healthcare System, LLC,* 482 F.3d 802, 806 (5th Cir. 2007); *Septimus,* 399 F.3d at 608. This part of the analysis, known as the "pretext" alternative, involves a second, more stringent, causation inquiry that requires her to show that but for her protected activity, she would not have been discharged. *Septimus,* 399 F.3d at 608; *Long v. Eastfield College,* 88 F.3d 300, 305 n.4 (5th Cir. 1996).

Alternatively, where an employee concedes that retaliation was not the *sole* reason for his or her discharge, but argues that it was at least a motivating factor for the termination, the mixed-motive framework applies at this stage of the proceedings. *Richardson v. Monitronics Intl., Inc.,* 434 F.3d 327, 333 (5th Cir. 2005) (emphasis in original). McKnight has not made such a concession, and argues only that TRAT's purported reason for her discharge was pretextual. Therefore, the court will conduct this part of its analysis using the pretext standard.

McKnight relies upon her early January 2007 performance review in her attempt to controvert TRAT's proof of a legitimate, non-retaliatory reason for its decision. Even when these facts are viewed in the light most favorable to McKnight, they do not raise a genuine issue of material fact concerning pretext. Although it is undisputed that McKnight received a relatively favorable review *prior to the investigation*, she has not disputed TRAT's evidence that through its investigation of the January 12th incident, TRAT discovered that McKnight had been insubordinate, and physically and verbally combative with others in the department, including but not limited to that incident.

Whether or not the picture of McKnight that emerged from the investigation was accurate or not, she has not set forth any evidence suggesting that Owens did not genuinely believe, based upon the information gathered, that he needed to fire her for those reasons. *See Bryant v. Compass Group USA Inc.,* 413 F.3d 471, 478 (5th Cir. 2005)(evidence that an investigation may have come to a wrong conclusion does not

11

establish improper motive); *Little v. Republic Refining Co.,* 924 F.2d 93, 97 (5th Cir. 1991) (incorrectly but genuinely held belief concerning employee's performance was legitimate, non-discriminatory reason for termination).  Employment discrimination suits are "not intended to be a vehicle for second-guessing of business decisions, or to transform the courts into personnel managers."  *Bryant,* 413 F.3d at 478, *quoting Bienkowski v. Am. Airlines, Inc.,* 851 F.2d 1503, 1507-08 (5th Cir. 1988).  By offering only evidence of a performance review that admittedly was conducted prior to TRAT's investigation into McKnight's on the job conduct, McKnight asks the court to second-guess TRAT, an endeavor not permitted by applicable law.   McKnight has failed to raise a fact issue regarding pretext, and her retaliation claim therefore must be dismissed.

**IV.     Plaintiff's Motion to Strike Defendant's Pleadings**

On November 12, 2008, Plaintiff filed her Provisional Response to Defendant's Motion for Summary Judgment.  The court later granted Plaintiff's Fed. R. Civ. P. 56(f) motion, permitting additional discovery and extending Plaintiff's response date to January 30, 2009.  On January 30, 2009, Plaintiff filed a notice regarding her intent to stand on her provisional response.  Defendant then filed a reply to Plaintiff's notice on February 5, 2009, which Plaintiff moved to strike.  Because the court finds that it reaches the same result as to Defendant's summary judgment motion whether or not it considers Defendant's reply, Plaintiff's motion to strike is **denied as moot.**

## V.     Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **granted**, and Plaintiff's Claims are hereby **dismissed with prejudice**.  Plaintiff's Motion to Strike Defendant's Pleadings is **denied as moot**.  Judgment will be entered by separate document.

**SO ORDERED**.

Signed April 21st, 2009.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE